United States District Court
Southern District of Texas
**ENTERED**
May 13, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Matthew R. Carter, | § § § | |
| *Plaintiff*, | § § | |
| | § | Civil Action No. 4:24-cv-02110 |
| v. | § § | |
| Octapharma Plasma, Inc., | § § | |
| *Defendant*. | § § § | |

# MEMORANDUM AND RECOMMENDATION

On April 7, 2025, Plaintiff Matthew R. Carter filed a motion for summary judgment, asserting that a witness affidavit, coupled with exhibits attached to his complaint, establish the elements of his claims under Title VII of the Civil Rights Act of 1964. *See* Dkt. 45 (citing Dkt. 20 and Dkt. 42).[1] After considering the motion, Defendant Octapharma Plasma, Inc.'s response, Dkt. 46, the record, and the applicable law, it is recommended that Carter's motion for summary judgment be denied.

## Background

Carter began working at Octapharma in October 2021 as a processing technician. Dkt. 46-1 at 5 (Declaration of Kishia Means). In February 2022,

---

[1] Defendant Octapharma Plasma, Inc.'s more recent summary judgment motion (Dkt. 47), which is unripe, will be addressed in a separate Memorandum.

he was transferred to the location at 10945 FM 1960 W. in Houston, Texas (the "Center"). *Id.* Kishia Means, Octapharma's Regional Director, oversaw the Center. *Id.* at 6.

Carter did not apply for a promotion while employed by Octapharma. *See id.* at 5. Rather, he expressed interest in being "cross-trained." *See id.* at 6; *see also* Dkt. 20 at 1 (Carter's March 20, 2022 email to Ms. Means "regarding the cross training for Phlebotomy"). But during that period, staffing shortages left the Center without resources to cross-train employees, as it was focusing on training new hires. *See* Dkt. 46-1 at 6. In a declaration, Ms. Means states that Carter was not treated any differently in this respect than any other Center employee. *See id.*

On May 27, 2022, Carter emailed Ms. Means to complain about a co-worker, Cesar Martinez. *See* Dkt. 20 at 5. The email accused Martinez of committing "numerous errors with plasma units," including by "placing units in [the] wrong case number." *See id.* Ms. Means responded that she would follow up on Carter's concerns after she returned. *See id.* at 6.

On June 6, 2022, Martinez filed a complaint against Carter about an incident that occurred the previous day. *See* Dkt. 46-1 at 6. According to Martinez, he had asked Carter to locate donor samples. *Id.* at 11 (Declaration of Cesar Martinez). Carter responded that he was unable to find the samples. *Id.* When Martinez asked him why that was so, Carter became upset. *Id.*

2

While the two were arguing, Carter "became aggressive" and "said that we could go 'handle' the situation outside," which Martinez construed as a "physical threat" by Carter. *Id.* at 11-12. After Martinez refused to go outside with Carter, Carter left. *Id.*

During Octapharma's investigation of the incident, Carter claimed that Martinez had called him a "snitch b****h n***a," *id.* at 6, an allegation that Martinez denies, *see id.* at 12. But the investigation concluded that Martinez had not used the alleged racial slur, finding instead that Carter "was the aggressor." *Id.* at 6 (Means declaration).

On July 11, 2022, Carter injured his finger at work and was placed on leave for ten days. *Id.* During that period, Carter contacted Ms. Means and accused Martinez of following him in a car on July 17, 2022, while Carter was on a bike, and threatening Carter. *Id.*; *see also* Dkt. 20 at 7, 13. Martinez, however, maintains that this incident never occurred. *See* Dkt. 46-1 at 12. According to Ms. Means, Octapharma asked Carter for additional information about the incident, but he did not provide any. Dkt. 46-1 at 6.

Octapharma's evidence reflects that Carter resigned on July 22, 2022 and filed a charge of discrimination with the Texas Workforce Civil Rights Division one week later. *Id.* at 6, 14. After receiving a right-to-sue letter, Carter filed this suit, alleging that Octapharma discriminated against him on

3

the basis of "color" by (1) failing to promote him; and (2) failing to address Martinez's "intentional behavior" and harassment. *See* Dkt. 1 at 1-2.

## Legal standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (internal quotation marks omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing]

4

credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## Analysis

### I.  Evidentiary objections.

Carter attached no evidence to his motion for summary judgment. *See* Dkt. 45. Instead, his motion refers to two filings. One of them, which Carter characterizes as a sworn witness affidavit, *see* Dkt. 45 at 1, includes no such thing. *See* Dkt. 42. That filing is a *motion* to subpoena Ms. Kishia Means, Dkt. 42, which was stricken by this Court, Dkt. 43.

The other filing incorporated in Carter's motion is a set of documents, with Carter's handwritten annotations, that were submitted in support of his complaint. *See* Dkt. 20. Octapharma objects to those documents as unauthenticated and containing inadmissible hearsay. *See* Dkt. 46 at 6-7.

Octapharma's authenticity objection is not well-taken at this stage. The 2010 amendment to Rule 56 reflects that "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)). This means

5

summary-judgment evidence "need not be authenticated or otherwise presented in an admissible form," so long as the court concludes that such evidence is capable of being put in an admissible form at trial. *See Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017) (rejecting authenticity objection to a contract). The documents fit this test, as they consist of emails, an Octapharma memorandum, photographs of a street and parking lot, a text message, a police report, and a subpoena. *See* Dkt. 20.

Octapharma's alternative hearsay objection is insufficient. Under Federal Rule of Evidence 103(a)(1), "[e]videntiary objections must be specific." *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004). Objections that fail to identify the precise objectionable material fail to meet the specificity requirement. *See Duncan v. Univ. of Tex. Health Sci. Ctr. Hous.*, 2010 WL 11519300, at *8 (S.D. Tex. Dec. 10, 2010). Octapharma has not identified what specific statements contained in Carter's documents constitute hearsay. Its global hearsay objection is therefore overruled. *See, e.g.*, *Ortiz Solorzano v. Passafiume*, 2020 WL 5984084, at *5 (S.D. Tex. Oct. 8, 2020) (overruling hearsay objection that failed to identify particular statements as hearsay).

Nevertheless, the Court will not consider the numerous handwritten notations on Carter's documents. Those notations reflect Carter's unsworn testimony about the documents' contents. *See, e.g.*, Dkt. 20 at 5 (explanation that his email was "[f]ollowing Octapharma's policy by reporting harassment");

6

*id.* at 9-11 (Carter describing the photographs with his account of the alleged July 17, 2022 incident where Martinez allegedly accosted him); *id.* at 12 (describing a text message as Carter's reporting Martinez to Human Resources). Those notations are inadmissible hearsay, as they constitute out-of-court statements offered for the truth of the matter asserted. *See* Fed. R. Evid. 801(a). Such plainly inadmissible evidence is disregarded. *See, e.g.*, *Bellard v. Gautreaux*, 675 F.3d 454, 460-61 (5th Cir. 2012) (holding a district court can *sua sponte* reject inadmissible hearsay on summary judgment).

## II. Carter has not established his Title VII claims.

Carter's motion for summary judgment recites the *prima facie* requirements for his Title VII discrimination and retaliation claims but does not marshal any supporting evidence. *See* Dkt. 45. Octapharma has responded with evidence raising fact issues on those claims. As a result, Carter has shown that he is entitled to summary judgment, as a matter of law.

### A. Title VII discrimination claim

Carter moves for summary judgment on his race discrimination claim. Absent direct evidence of discrimination—which Carter does not submit—this claim requires prima facie proof that that (1) Carter is a member of a protected group; (2) he was qualified for the position at issue; (3) he was discharged or suffered some adverse employment action by the employer; and (4) he was replaced by someone outside his protected group or was treated less favorably

7

than other similarly-situated employees outside the protected group. *See Clark v. City of Alexandria*, 116 F.4th 472, 486 (5th Cir. 2024). Only upon that showing would the burden shift to Octapharma to "articulat[e] a legitimate, nondiscriminatory reason for its actions." *See id.* (quoting *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007)). Assuming that Octapharma did so, Carter would then need to show that Octapharma's "proffered reason is merely a pretext for discrimination." *See id.* (quotation and alteration omitted).

Carter's allegations do not engage these requirements. Instead, the complaint asserts that Octapharma failed to address harassment by his co-worker, Cesar Martinez. *See* Dkt. 1 at 2. The same is true in Carter's motion for summary judgment, which asserts that Octapharma's management failed to act when Carter complained about Martinez's asserted use of "racial epithets" and "continued threats" that "created an extremely hostile and unsafe work environment." *See* Dkt. 45 at 2. That is a hostile work environment claim, rather than a claim of intentional race-based discrimination.

Ultimately, Octapharma is correct that Carter has submitted no evidence on any of the elements of a discrimination claim. *See* Dkt. 46 at 13. This includes the requirement to show an adverse employment action. Although Carter alleges that Octapharma "terminated" his employment, *see* Dkt. 45 at 2, the record evidence indicates that Carter voluntarily resigned,

8

Dkt. 46-1 at 6. The declaration of Octapharma's regional manager, Kishia Means, also states that Carter never applied for a promotion, was not denied a promotion, and was not treated differently than any other employee. *See id.* at 5-6. Because Carter did not make a *prima facie* case of discrimination, he cannot obtain summary judgment on this claim.

### B. Title VII hostile work environment

Although not addressed in his argument section, Carter's allegations raise a race-based hostile work environment claim. *See* Dkt. 45 at 2. For this claim, Carter must show that "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 509 (5th Cir. 2024) (quoting *Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023)). "The harassing behavior must be 'sufficiently severe or pervasive' such that it 'alters the conditions of the victim's employment and creates an abusive environment,' and the 'environment must be objectively and subjectively hostile to the victim of racial discrimination.'" *Id.* (quoting *Arredondo*, 81 F.4th at 433). When evaluating the severity or pervasiveness of the harassment, courts "consider the frequency of the discriminatory conduct; its severity;

9

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Arredondo*, 81 F.4th at 433 (quotation omitted).

The only issue that the Court need address is whether Carter established that he was subjected to race-based harassment—elements two and three. Carter maintains that Martinez's use of a racial epithet during a June 5, 2022 dispute and Martinez's threat of violence against Carter on July 17, 2022 are enough to show he was subjected to a hostile work environment based on race. *See* Dkt. 45 at 2. But these are hotly disputed facts.

As Octapharma notes, Martinez's declaration categorically denies calling Carter a "snitch b***h n***a," using the n-word, or using any racial slur against Carter. *See* Dkt. 46-1 at 12. In the same declaration, Martinez also denies following Carter in his SUV while Carter was riding a bike on July 17, 2022, and denies ever threatening him. *See id.* According to Martinez, "this alleged incident never occurred," and he has "never interacted with Mr. Carter outside of work at Octapharma." *Id.*

Martinez's declaration raises a genuine issue of material fact as to whether the alleged harassment occurred. This alone precludes summary judgment on Carter's hostile work environment claim.

### C.     Title VII retaliation

According to Carter, Octapharma violated Title VII by terminating him in retaliation for filing a charge with the EEOC. *See* Dkt. 45 at 3. He offers no evidence supporting that assertion, and Octapharma's evidence refutes it.[2]

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) [he] engaged in activity protected under the statute, (2) [his] employer took an adverse employment action against [him], and (3) a causal connection exists between the protected activity and the adverse action." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, --- F.4th ---, 2025 WL 1039781, at *6 (5th Cir. Apr. 8, 2025) (citing *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013)). If a plaintiff meets his prima facie burden, the burden of production shifts to the employer to "articulate a legitimate, nonretaliatory reason for the alleged retaliatory action." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022). And if the employer satisfies its burden of production, "the plaintiff must offer sufficient evidence that the proffered reason is a pretext for retaliation." *Id.* But the employee has the "ultimate burden" to "prove that the adverse employment

---

[2] Carter also misconstrues Octapharma's answer as an "admission" of facts pertaining to his claims. *See* Dkt. 45 at 3. The answer, however, explicitly denied Carter's Title VII allegations. *See* Dkt. 33 at 2 (denying allegations in paragraphs 6-8 of the complaint, Dkt. 1).

action would not have occurred but for the protected conduct." *Id.* (affirming jury's finding of liability on retaliation theory).

Carter maintains that he engaged in protected activity by filing a discrimination charge with the Texas Workforce Commission. Dkt. 45 at 3; *see also Lewis*, 2025 WL 1039781, at *6 ("The filing of an EEOC charge constitutes protected activity.") (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005)). Octapharma's evidence confirms this. *See* Dkt. 46-1 at 14. Problematically, however, Carter proffers no evidence that Octapharma took adverse action against him because he filed the charge.

Contrary to Carter's assertions, Octapharma has *not* admitted that it terminated Carter's employment. *Compare* Dkt. 45 at 2-3 (Carter lodging this assertion), *with* Dkt. 46-1 at 6. Instead, Octapharma's evidence reflects that Carter *resigned* on June 22, 2022. *See* Dkt. 46-1 at 6.

Moreover, Octapharma has controverted Carter's claimed sequence of events. The sole record evidence on this point reflects that Carter left his position more than a month *before* filing his discrimination charge. *See id.* Thus, even assuming that Octapharma forced Carter to resign (which no evidence suggests), such an action taken before Carter engaged in the protected activity "is no evidence whatever of causality." *Wojcik v. Mem'l Hermann Health Sys.*, 2019 WL 4887265, at *6 (S.D. Tex. Oct. 3, 2019) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001), and rejecting

12

retaliation claim where the protected activity "*followed*" employee's receipt of word that "her employment was being terminated"); *see also, e.g.*, *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (no prima facie retaliation case without evidence that plaintiff engaged in protected activity before the adverse employment action occurred). These deficiencies defeat Carter's request for summary judgment on the retaliation claim.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff Matthew R. Carter's motion for summary judgment (Dkt. 45) be **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on May 13, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge