United States District Court
Southern District of Texas
**ENTERED**
July 07, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Matthew R. Carter, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:24-cv-02110 |
| v. § | |
| § | |
| Octapharma Plasma, Inc., § | |
| § | |
| *Defendant.* § | |

## **MEMORANDUM, RECOMMENDATION, AND ORDER**

Two motions are pending, one filed by each side. Defendant Octapharma Plasma, Inc. ("Octapharma") filed a motion for summary judgment against Plaintiff Matthew Carter's Title VII claims. *See* Dkt. 47. Because Carter did not respond, the motion is deemed unopposed. *See* S.D. Tex. L.R. 7.2. For his part, Carter filed a motion to disqualify Octapharma's attorney, Charles Hayes, to which Octapharma responded. Dkt. 50, 53.

After considering both motions, Dkt. 47, 50, the response, Dkt. 53, the record, and the applicable law, it is recommended that Octapharma's motion for summary judgment be granted. It is also ordered that Carter's motion to disqualify Octapharma's counsel is denied.

## Background

Carter began working at Octapharma in October 2021 as a processing technician. Dkt. 47-1 at 5 (Declaration of Kishia Means). In February 2022, he was transferred to the location at 10945 FM 1960 W. in Houston, Texas (the "Center"). *Id.* Kishia Means, Octapharma's Regional Director, oversaw the Center, and Karen Sauceda was Carter's supervisor. *Id.*

On Carter's first day at the Center, he was written up for aggressively confronting another employee. *Id.* at 6 (Means declaration); *id.* at 12 (Corrective Action Form). A Corrective Action Form reflects that Carter wrote and crossed out a summary reflecting that he told a coworker to "talk to [him] outside" so he could "remind her of her words." *Id.* at 12. He was given "Verbal Coaching" and counseled on "how to properly address conflict." *Id.* at 6, 12.

In April 2022, Carter approached Sauceda about his interest in being promoted to Senior Processing Technician. *See id.* at 28 (Carter's deposition). Sauceda told Carter she would "look into it." *Id.* at 28-29. Carter did not formally apply for this promotion or any other position. *Id.* at 6, 29.

On June 6, 2022, Carter's coworker, Cesar Martinez ("Martinez"), filed a complaint against Carter about an incident that occurred the previous day. *See id.* at 7; *id.* at 10 (complaint intake form); *id.* at 18 (Declaration of Cesar Martinez). According to Martinez, he had asked Carter to locate donor samples, which Carter said he was unable to find. *Id.* at 10, 17. When

2

Martinez asked him why that was so, Carter became upset. *Id.* While the two were arguing, Carter "became aggressive" and "said that we could go 'handle' the situation outside," which Martinez construed as a "physical threat." *Id.* at 10, 17-18. Martinez refused to go outside, and Carter left. *Id.* at 10, 18.

During Octapharma's investigation of the incident, Carter claimed that Martinez had called him a "snitch b****h n***a." *See id.* at 7; *see also id.* at 24 (Carter's deposition). Martinez denies this allegation. *See id.* at 18. The investigation concluded that Martinez had not used the alleged racial slur, finding instead that Carter "was the aggressor." *Id.* at 7 (Means declaration).

On July 11, 2022, Carter injured his finger at work and was placed on leave for ten days. *Id.* During that period, Carter contacted Octapharma's regional director, Ms. Means, and accused Martinez of following him in a car on July 17, 2022, while Carter was on a bike, and threatening Carter. *Id.*; *see also id.* at 33 (Ex. E, July 17, 2022 police report). According to Ms. Means, Octapharma asked Carter for more information about the incident, but he did not provide any. *Id.* at 8. Carter's police report described the two incidents with Martinez mentioned above. *Id.* at 33; *see also id.* at 26 (Carter deposition).

Octapharma's evidence reflects that Carter resigned on July 22, 2022 and filed a charge of discrimination with the Texas Workforce Civil Rights Division and EEOC one week later. *Id.* at 8, 20. After receiving a right-to-sue letter, Carter filed this suit, alleging that Octapharma discriminated against

3

him on the basis of "color" by (1) failing to promote him; and (2) failing to address Martinez's "intentional behavior" and harassment. *See* Dkt. 1 at 1-2.

Carter filed a motion for summary judgment, which this Court denied. *See* Dkt. 45; Dkt. 52 (adopting Dkt. 48). In the meantime, Octapharma filed its motion for summary judgment, arguing that Carter failed to raise a fact issue on his Title VII claims. Dkt. 47. Carter failed to timely respond. On May 19, 2025, Carter filed a motion to disqualify Octapharma's attorney, Charles Hayes, for "conflict of interest" and "unethical conduct," *see* Dkt. 50 at 1, to which Octapharma responded, Dkt. 53. Both motions are ripe for resolution.

## Legal standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue it addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quotation omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022). But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Hou.*, 337 F.3d 539, 541 (5th Cir. 2003)).

## Analysis

### I. Summary judgment is warranted on Carter's Title VII claims.

Octapharma identifies four Title VII claims, raised in Carter's complaint, Dkt. 1, his EEOC charge, Dkt. 47-1 at 20, or his summary-judgment motion, Dkt. 45. Those claims are failure to promote, retaliation, hostile work environment, and constructive discharge. *See* Dkt. 47 at 5. For the reasons stated below, Octapharma is entitled to summary judgment on those claims.

5

### A. Failure to promote

As Octapharma argues, Carter cannot establish a *prima facie* case of racial discrimination based on a failure to promote. *See* Dkt. 47 at 13-15. This claim requires *prima facie* proof that (1) Carter is a member of a protected group; (2) he sought and was qualified for a position for which applicants were being sought; (3) he was rejected for the position; and (4) the employer either hired someone outside his protected group or continued to seek applicants with his qualifications. *See Johnson v. PRIDE Indus., Inc.,* 7 F.4th 392, 406 (5th Cir. 2021). Only upon that showing would the burden shift to Octapharma to "articulate a legitimate, nondiscriminatory reason" for its actions. *See id.* Assuming that Octapharma did so, Carter would then need to show that "the reason proffered by [Octapharma] is a mere pretext for unlawful discrimination." *See id.*

Octapharma is correct that, other than his membership in a protected group, Carter has no evidence supporting the foregoing elements. As to the second element, Carter's testimony shows that he asked his supervisor, Ms. Sauceda, to consider him for a promotion to Senior Processing Technician, but it does not show either that Octapharma was seeking applicants for that position or that Carter formally applied. *See* Dkt. 47-1 at 28-29 (Carter deposition). Nor has Carter shown that he was qualified for the Senior Processing Technician job. If anything, Octapharma's evidence of Carter's

6

aggression toward coworkers suggests that Carter was unsuited for a leadership position that required an ability to communicate effectively with all employees. *See id.* at 6-7 (Means declaration); *id.* at 12 (Corrective Action Form); *id.* at 17-18 (Martinez declaration).

As to the third element, Carter's testimony shows, not that he was rejected from the position, but that Ms. Sauceda responded to his request by saying she would "look into it." *See id.* at 28-29. And there is no evidence supporting the fourth element, which would require a showing that Octapharma either hired someone outside Carter's protected group or continued seeking applicants. Indeed, no record evidence indicates that Octapharma sought applicants for this position, nor that it hired anyone to fill such a position after Carter asked about it. *See id.* at 6, 28. Martinez's promotion on April 8, 2022 is irrelevant because it occurred before Carter approached Ms. Sauceda on April 27, 2022. *See id.* at 6, 14, 28. Carter's failure to establish a *prima facie* case for failure to promote entitles Octapharma to summary judgment on this claim.[1]

---

[1] Because the burden does not shift to Octapharma to proffer non-discriminatory reasons for its actions, the Court need not reach Octapharma's remaining arguments on this claim. *See* Dkt. 47 at 15-16.

B.     Retaliation

Although Carter did not plead retaliation, *see* Dkt. 1, he raised it in his summary-judgment motion, Dkt. 45 at 3, and Octapharma addresses it out of an abundance of caution. *See* Dkt. 47 at 16. "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) [he] engaged in activity protected under the statute, (2) [his] employer took an adverse employment action against [him], and (3) a causal connection exists between the protected activity and the adverse action." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) (citing *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013)). If a plaintiff meets his *prima facie* burden, the burden of production shifts to the employer to "articulate a legitimate, nonretaliatory reason for the alleged retaliatory action." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 437 (5th Cir. 2022). And if the employer satisfies its burden of production, "the plaintiff must offer sufficient evidence that the proffered reason is a pretext for retaliation." *Id.* But the employee has the "ultimate burden" to "prove that the adverse employment action would not have occurred but for the protected conduct." *Id.* (affirming jury's finding of liability on retaliation theory).

It is undisputed that Carter engaged in protected activity by filing an EEOC charge on July 29, 2022. *See* Dkt. 47 at 16; Dkt. 47-1 at 20 (EEOC charge); *id.* at 27 (Carter's deposition). But Carter resigned from Octapharma

a week *earlier*, on July 22, 2022. Dkt. 47-1 at 8, 27. This is fatal to Carter's claim for two reasons. First, Carter was not subjected to an adverse employment action if he voluntarily resigned. And second, as a matter of logic, Carter's EEOC filing could not have caused any acts or events that had *already occurred*. *See, e.g., Quamar v. Hou. Hous. Auth.*, 2024 WL 2055008, at *6 (S.D. Tex. May 8, 2024) (collecting cases). Yet Carter identifies no retaliatory acts that happened after he filed the EEOC charge. *See, e.g., Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (no prima facie retaliation case without evidence that plaintiff engaged in protected activity before the adverse employment action occurred). Summary judgment should be granted for Octapharma on the retaliation claim.

### C. Hostile work environment

As with retaliation, Octapharma addresses Carter's hostile work environment claim out of an abundance of caution, despite its absence from his pleading. *See* Dkt. 1; Dkt. 45 at 2; Dkt. 47 at 17-20. For this claim, Carter must show that "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ayorinde v. Team Indus. Servs. Inc.*, 121 F.4th 500, 509 (5th Cir. 2024) (quoting *Arredondo v.*

9

*Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023)). "The harassing behavior must be 'sufficiently severe or pervasive' such that it 'alters the conditions of the victim's employment and creates an abusive environment,' and the 'environment must be objectively and subjectively hostile to the victim of racial discrimination.'" *Id.* (quoting *Arredondo*, 81 F.4th at 433). For that requirement, courts "consider the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Arredondo*, 81 F.4th at 433 (quotation omitted).

As Octapharma argues, Carter's two allegations of harassment cannot survive summary judgment. *See* Dkt. 47 at 18. First, Carter testified that his coworker Martinez called him a "snitch-a** n***a" in May or June 2022. Dkt. 47-1 at 7, 24. Even if Martinez did so—which he denies, *see id.* at 18,—a coworker's single use of racial slur is not sufficiently "severe or pervasive" to satisfy a hostile work environment claim. *See, e.g., Clark v. City of Alexandria*, 116 F.4th 472, 481 (5th Cir. 2024) (two racial comments failed to rise beyond mere "offensive utterances") (collecting cases).

Second, Carter testified that Martinez harassed him outside the workplace on July 17, 2022, but without any evidence of racial motivation. *See* Dkt. 47 at 19; Dkt. 47-1 at 33 (July 17, 2022 police report); *id.* at 7. Without evidence that it stemmed from racial basis, that incident cannot support

10

Carter's claim. *See Clark*, 116 F.4th at 480-81 (non-racial "harassing stare" between coworkers failed to substantiate a hostile work environment).

In addition, as Octapharma argues, Octapharma did not fail to take prompt remedial action. *See* Dkt. 47 at 19-20. After the June incident, which Martinez—*not Carter*—reported internally, Octapharma responded with an investigation that determined Carter had been the aggressor. *See* Dkt. 47-1 at 7. After the second incident was reported, Octapharma requested more information from Carter so it could investigate, but he provided none.[2] *See* Dkt. 20 at 7 (Carter's exhibits, police incident email to Ms. Means); Dkt. 47-1 at 8. Carter's hostile work environment claim fails.

### D. Constructive discharge

Because Carter's EEOC charge mentions constructive discharge, Octapharma addresses it out of an abundance of caution. *See* Dkt. 47 at 20-21; Dkt. 47-1 at 20 (EEOC charge). "A resignation is actionable under Title VII ... only if the resignation qualifies as a constructive discharge." *Newbury v. City of Windcrest*, 991 F.3d 672, 677 (5th Cir. 2021) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (alteration in original)). "A plaintiff alleging constructive discharge must show that his or her working

---

[2] Previously, Carter's exhibits attached to his own motion for summary judgment were deemed admissible at this stage, apart from his handwritten notations on those documents that were excluded as hearsay. *See* Dkt. 48 at 5-7.

11

conditions were so intolerable that a reasonable employee would feel compelled to resign." *Id.* (quotation omitted). When evaluating this claim, courts consider whether the plaintiff suffered "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id.* (quotation omitted). This claim requires "a greater degree of harassment than that required by a hostile environment claim." *Id.* (quotation omitted).

As Octapharma argues, Carter has no evidence to satisfy any of the above factors. *See* Dkt. 47 at 21. No evidence suggests that Carter was demoted, had his salary or responsibilities reduced, or had his work reassigned to someone else. At best, the two incidents underlying Carter's unsuccessful hostile-work-environment claim speak to the sixth factor, harassment. But insufficient hostile-environment evidence cannot support constructive discharge. *See Newbury*, 991 F.3d at 677-78. No evidence indicates that Carter was constructively discharged. Octapharma is entitled to summary judgment on Carter's Title VII claims.

**II.    Carter's motion to disqualify opposing counsel is meritless.**

Carter has moved to disqualify Octapharma's attorney, Mr. Christopher Hayes.  *See generally* Dkt. 50.  He accuses Hayes of "conflict of interest" and "unethical conduct."  *Id.* at 1.  Those allegations are unsupported.

"Motions to disqualify are subject to an exacting standard both to protect a party's right to counsel of choice as well as to discourage the use of such motions as a dilatory trial tactic."  *W&T Offshore, Inc. v. Endurance Assurance Corp.*, 2025 WL 1556601, at *2 (S.D. Tex. June 2, 2025) (quotation omitted).  "The movant bears the burden of proving that disqualification is warranted, and that burden is heavy, especially where a party files a motion to disqualify opposing counsel, as opposed to a client's motion to disqualify his own counsel, because motions to disqualify from an opponent have the potential to be used as procedural weapons advancing purely tactical purposes, such as delay or harassment."  *Id.* (quotation and alterations omitted).  "When considering disqualification, the Court relies on: (1) the local rules in the district; (2) the American Bar Association's (ABA) Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct."  *Id.*

Carter appears to base his "conflict of interest" allegation on a close relationship between two Octapharma employees, Donetta Abdel-Malek and Martinez, insinuating that Mr. Hayes's "judgment is swayed by personal bias

13

rather than objective qualifications." *See id.* at 3-4. But as Octapharma notes, the supposed relationship between its employees has no bearing on Mr. Hayes's representation of Octapharma here.[3] Dkt. 53 at 3. It certainly raises no conflict of interest implicating Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct, which addresses conflicts stemming from an attorney's representation of an *opposing or successive party* whose interests are adverse to those of a current or prior client.

Carter also accuses Octapharma of inaccurately telling the EEOC that Martinez did not receive a promotion while working with Carter. *See* Dkt. 50 at 1-3; Dkt. 53 at 4. Octapharma responds that Mr. Hayes was not involved in drafting Octapharma's EEOC filing. *See* Dkt. 53 at 4. Furthermore, Mr. Hayes agreed to further investigate the apparent error. *See id.*; Dkt. 53-2 (emails between Hayes and Carter). The ensuing investigation revealed that Martinez had in fact been promoted at the Center, and Octapharma produced records corroborating that information. *See* Dkt. 53 at 4-5; Dkt. 53-3 at 2-3. Nothing in this sequence of events suggests that Mr. Hayes acted unethically or violated any rules. Carter's motion to disqualify Octapharma's counsel is denied.

---

[3] Nor does Octapharma's counsel owe a duty to Carter, an opposing party, to accept his unilateral characterization of the facts.

14

## Recommendation and Order

For the foregoing reasons, it is **RECOMMENDED** that Defendant Octapharma Plasma, Inc.'s motion for summary judgment (Dkt. 47) be **GRANTED** and that all of Plaintiff Matthew Carter's claims be **DISMISSED WITH PREJUDICE**.

It is **ORDERED** that Plaintiff Matthew Carter's motion to disqualify Defendant's counsel (Dkt. 50) is **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on July 7, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge